A90A2083. PARKER et al. v. PEAVEY et al.
(403 SE2d 213)

SOGNIER, Chief Judge.

Sallie M. Parker, individually and as executrix of the estate of her late husband, Bennie Parker, brought suit against the decedent's adult children, Dianne Parker Peavey and George Walton Parker, to recover sums received by the children from certificates of deposit held by the decedent. A judgment was entered for Peavey and Parker after a bench trial, and Sallie Parker filed this appeal.

Appellant and Bennie Parker were married on October 6, 1986, and he died testate on December 30, 1989. Appellees are the children of the decedent and his first wife, to whom he was married for 49 years. In 1987 and 1988, the decedent established three certificates of deposit totalling $156,466 with the Peoples Bank of Lyons (the "bank"). The largest certificate, $86,887, was set up in the names of the decedent and appellant, while the other two were in the name of the decedent only. Five days after the decedent's death, appellant and appellees went to the bank, obtained the decedent's will and the CDs

from his safe deposit box, and then proceeded to the probate court and probated the will. The will provided that appellant was to receive a life interest in the decedent's house and land, that appellees were to receive $30,000 each, and that the balance of the estate was to be divided equally between appellees. Upon appellee Parker's suggestion that they settle the CDs, the parties then returned to the bank. After Parker discussed the matter with Nancy Strickland, a bank official, appellant and appellee Peavey joined him inside the bank to cash the CDs. At Strickland's direction, appellant endorsed each CD as "Mrs. Sallie M. Parker, Execut[rix] of [the] Estate of Bennie Parker." Based on appellees' instructions, Strickland then deposited $2,000 (the amount appellant had paid for burial expenses) into the checking account appellant had held jointly with the decedent, and issued a cashier's check for $81,134 to each appellee.

At trial, the parties disagreed concerning appellant's emotional state and actions at the time of this transaction. Appellant testified that she was nervous and distraught, that she "could . . . hardly sign" the CDs, and that she repeatedly protested to appellees and Strickland that the transaction was "not right." She stated that appellees forced her to endorse the CDs, telling her that everything other than the house belonged to them. Appellant testified she did not learn until she telephoned the bank the following week that one of the CDs had been issued jointly to her and the decedent, although she did recall that the decedent had told her he had made provisions for her by purchasing a CD.

Conversely, both appellees and Strickland testified that appellant was calm, that she appeared to understand the transaction, and that several times Parker asked whether she understood what was occurring and she responded affirmatively. Appellees testified that because of appellant's numerous statements over the prior years that she did not marry their father for his money and that she thought his money should go to his children upon his death, they concluded she intended to give the proceeds of the joint CD to them in exchange for their agreement to pay the decedent's medical bills. The trial court held that appellant had made an inter vivos gift of the joint CD, and that in her capacity as executrix she assented to the bequest of the other CDs to appellees.

1. With regard to the two CDs issued solely in the name of the decedent, we affirm the trial court's conclusion that appellant, as executrix, assented to their distribution to appellees. Assent may be express or presumed by the executrix's conduct, OCGA § 53-2-109 (a); *McGahee v. McGahee*, 204 Ga. 91, 94 (1) (48 SE2d 675) (1948), and assent to transfer of a chose in action or other personalty is evidenced by an assignment or transfer of the chose in action to the legatees. OCGA § 53-2-109 (b). Assent to a legacy places title in the legatee

and is generally irrevocable once made. *McGahee*, supra. Here, there is no dispute that appellant, in her capacity as executrix, transferred the CDs to appellees. Thus, assent was express and irrevocable. Although appellant argues in her brief that the short lapse of time between the probating of the will and the transfer of the CDs suggests the interests of creditors were not protected, see OCGA § 53-2-109 (d), the presence of debts did not prevent appellant from making an irrevocable assent to the legacy. *Dunagan v. Elder*, 154 Ga. App. 728, 729 (1) (270 SE2d 18) (1980).

2. We next address appellant's challenge to the trial court's finding concerning the CD issued jointly to her and the decedent. "To constitute a valid inter vivos gift, . . . (1) [t]he donor must intend to give the gift; (2) [t]he donee must accept the gift; and (3) [t]he gift must be delivered or some act which under law is accepted as a substitute for delivery must be done." OCGA § 44-5-80. The party seeking to prove title by gift must do so by clear and convincing evidence. *McGrew v. Cooper*, 110 Ga. App. 347, 350 (3) (138 SE2d 453) (1964). Pretermitting whether the intent and acceptance were established, we find there was no delivery as a matter of law. "Sums remaining on deposit at the death of a party to a joint account belong to the surviving party . . . as against the estate of the decedent, unless there is clear and convincing evidence of a different intention at the time the account is created." OCGA § 7-1-813 (a). This right of survivorship vests at the death of a party to a joint account, and the terms may be changed only by closing the account and reopening it under another name, OCGA § 7-1-814 (1), or by "presentation to the financial institution of a modification agreement in a form satisfactory to the financial institution and signed by all parties with a present right of withdrawal." OCGA § 7-1-814 (2). Moreover, payment of the funds in a joint account to the heirs or personal representative of a deceased party is not permitted unless proof is presented that the decedent was the last surviving party to the account. OCGA § 7-1-817.

The undisputed facts show that the joint CD constituted a "joint account" within the meaning of these provisions. See OCGA § 7-1-810 (1), (4); see also *White v. Royal*, 150 Ga. App. 57 (256 SE2d 662) (1979). This CD was not mentioned in the decedent's will, and there is no other evidence to indicate he intended the funds deposited thereby would not belong to appellant upon his death. See *Collins v. Collins*, 176 Ga. App. 79 (335 SE2d 307) (1985). There being no clear and convincing evidence to contradict the statutory presumption that the decedent intended for appellant to have the right of survivorship, we find the funds deposited in this joint account belonged to appellant *individually* as the surviving party and not to the decedent's estate. Id. at 80-81; see *Russell v. Hall*, 245 Ga. 677, 679 (2) (266 SE2d 491) (1980). As a result, appellant had no authority in her capacity as

executrix to transfer the funds on deposit in the joint account, see OCGA §§ 7-1-814; 7-1-817, and thus her signature as executrix was insufficient as a matter of law to constitute a delivery of the funds to appellees.

*Judgment affirmed in part and reversed in part. McMurray, P. J., and Carley, J., concur.*

DECIDED FEBRUARY 5, 1991 —
REHEARING DENIED FEBRUARY 25, 1991 —

*M. Francis Stubbs*, for appellants.
*Wilkes, Johnson & Smith, Ken W. Smith*, for appellees.