## A93A0413, A93A0414. HARRISON v. MARTIN; and vice versa.

(444 SE2d 618)

McMURRAY, Presiding Judge.

Frankie W. Harrison, executrix of the estate of Homer West ("the estate"), filed an action against Ann Wills Martin f/k/a Joan W. Wills, for principal, interest and attorney fees due under seven prom-

issory notes Martin allegedly executed in favor of West. Specifically, Harrison alleges Martin executed a $6,200 promissory note on July 21, 1975, a $25,000 promissory note on January 10, 1977, two $25,000 promissory notes on January 5, 1978, a $25,000 promissory note on December 18, 1978, a $27,500 promissory note on July 8, 1979, and a $75,000 promissory note on January 4, 1980. Harrison also seeks actual and punitive damages, alleging Martin fraudulently converted proceeds of a $9,000 check tendered for estate timber after West's death.[1]

Martin admits she executed all seven promissory notes alleged in Harrison's complaint, but asserts failure of consideration, satisfaction, accord and satisfaction and the applicable statute of limitation. Martin alleges "Homer West made a gift to her of and forgave any balance owed on any notes owed by [Martin] to him prior to his death." Martin denies that she fraudulently converted funds from the estate and alleges "that the [$9,000] timber sale check was deposited into a joint account opened by [Harrison] and [Martin] and [that] this money was used to pay the debts of the Homer West Estate and of [Harrison]."

The case was tried before a jury and the undisputed evidence reveals that Martin and Harrison are sisters; that Homer West is their older brother and that West provided generously for many of his relatives, including Harrison and Martin.[2] It is also undisputed that Homer West died on July 18, 1982, and that Harrison was named executrix of West's estate and sole beneficiary under his Last Will and Testament.

At trial, Harrison testified that she discovered the seven promissory notes in her brother's personal effects and that, to her knowledge, Martin never honored her obligation under these promissory notes. Harrison further testified that Martin fraudulently induced her to relinquish a $9,000 check tendered for estate timber after West's death and that Martin tortiously converted the proceeds of this check.

Although Martin admitted executing the seven promissory notes set out in Harrison's complaint, her testimony indicates that she did not receive $208,700 as reflected as total principal balances on the face of the seven notes. Martin testified that West loaned her $6,200 in exchange for her execution of a promissory note dated July 21,

---

[1] Although Harrison filed a four-count complaint on behalf of the estate, a pretrial order narrows the complaint to issues raised in Counts 1 and 3 of the complaint, i.e., claims for recovery under the promissory notes and claims against Martin for fraud and conversion.

[2] There is evidence that West unconditionally provided his sisters, Harrison and Martin, with substantial sums of money during his life. However, these gifts appear to be unrelated to Martin's liability under the promissory notes.

1975; that West loaned her $25,000 in exchange for her execution of a promissory note dated January 10, 1977; that West loaned her $25,000 in exchange for her execution of a promissory note dated January 5, 1978; that West loaned her $25,000 in exchange for her execution of a promissory note dated December 18, 1978; that she executed a $27,500 promissory note on July 8, 1979, in exchange for $2,500 and renewal of one of the earlier (unspecified) $25,000 loans and that she executed a $75,000 promissory note on January 4, 1980, in consideration of renewal of the three earlier $25,000 loans. Martin testified that she executed two $25,000 promissory notes dated January 5, 1978, because she was informed that the first note bearing the same date was defectively drafted. Martin explained that she paid West "$1,000" on April 8, 1977, and that she gave West "$6,500 [on] July 28, 1978."[3] Martin's testimony also indicates that she paid West $7,972 in exchange for satisfaction of the $25,000 promissory note dated January 10, 1977. (Martin introduced a document dated March 20, 1981, executed by Harrison under a general power of attorney for Homer S. West, designating satisfaction of a $25,000 loan secured by a deed to secure debt recorded in the Superior Court of Houston County and dated 1977.) Martin testified that she visited West in the hospital a few weeks before his death and that West then forgave her debts, including any obligation evidenced by the seven promissory notes.

Martin testified that Harrison gave her a $9,000 check at a closing involving the sale of estate timber rights; that Harrison "told [Martin] she had company at her house[,] she did not want them to know that she received any money[,] to give Jackie, [Martin's] son, $300 or $500 [for helping with the timber sale] and . . . to go deposit [the check] into [Martin's] checking account." Martin testified that she "and [Harrison then] went down to the bank[, deposited the proceeds of the $9,000 check] and put [Harrison's] name on [her] checking account with it." Martin explained that Harrison "had power of attorney [and] could use [the checking account] anytime she wanted to cash a check [and that Harrison] did use it many times." Martin also explained that she used this checking account to satisfy several estate debts.[4]

Lawana Thompson LaFavor affirmed that she went on "a visit along with Ann Wills [Martin] to her brother Homer's [hospital]

---

[3] A note penned by Homer West was admitted into evidence and appears to list monies West paid Martin between July 21, 1975, and December 18, 1978. This note also indicates that Martin paid West $1,000 on April 7, 1977, and $6,500 on July 31, 1978.

[4] The $9,000 check tendered in exchange for estate timber was payable to "Frankie W. Harrison, Individually and as Executrix of the will of Homer S. West, deceased" and was deposited into an account entitled, "ANN WILLS DEVELOPMENT & INVESTMENT DBA." Seven days after the $9,000 check was deposited, Martin withdrew $8,500 from this account via check made out to "Cash."

room just a few weeks before his death in the summer of 1982" and testified that West then appeared to be of sound mind and that West "told [Martin] that she did not owe him anything at all[,] she did not owe him a dime[,] they had been good to one another and that they had been close and that [Martin] owed him absolutely nothing."

Episcopal Priest Edward Sellers testified that he went to Homer West's hospital room a few weeks before West died; that he then observed Martin and Lawana Thompson LaFavor exit West's hospital room and that "[w]hatever had happened [during West's meeting with Martin, West] felt at peace with what he had done." The Reverend Sellers admitted that he was not present during the conversation between West and Martin, but explained that he knew the conversation "dealt with his property and how he was trying to arrange that [and that Martin] discussed the fact that . . . however he had arranged the final disposition of that, he was satisfied that he had done the right thing." The Reverend Sellers testified that Homer West was "clearly aware of the fact that he was in the process of dying. . . ."

Attorney Joneal Lee testified that he was familiar with the sibling relationship between Martin, Harrison and West; that he "always thought it was a very good close relationship"[;] that he prepared West's Last Will and Testament in 1979; that it was then his "impression . . . the parties were still close, that there was no argument between them, but that [Homer West] was giving everything in his will to his sister Frankie [Harrison] because [West] felt like he'd already given Ann [Martin] enough." Attorney Lee explained that "from the conversation that [he] had [with Homer West, he] never expected . . . the notes [executed by Martin] to be repaid."

The trial court denied Harrison's motion for directed verdict and the jury returned a $41,000 verdict for the estate. Martin filed a motion for judgment n.o.v. and Harrison filed a motion for judgment n.o.v. or, in the alternative, a motion for new trial.

Upon the trial court's denial of the motions of Harrison and Martin, Harrison appealed in Case No. A93A0413 and Martin cross-appealed in Case No. A93A0414.

In the first appearance in this Court of the cases sub judice, this Court (in an unpublished opinion, decided June 29, 1993) affirmed these cases without having considered the merits. The Supreme Court of Georgia granted certiorari in the cases sub judice and remanded these cases to this Court for our consideration on the merits. Consequently, this Court's judgments of June 29, 1993, in the first appearance are vacated. *Held*:

## Case No. A93A0413

1. Harrison contends the trial court erred in denying her motions

for directed verdict and for judgment n.o.v., arguing a prima facie case of liability was established via Martin's admission that she executed seven promissory notes in favor of West with principal balances totaling $208,700. Harrison also contends the trial court erred in failing to enter judgment for her based on Martin's admissions that she received $75,000 from West in exchange for the promissory notes dated January 10, 1977, January 5, 1978, and December 18, 1978, and the $75,000 renewal note dated January 4, 1980.

There is no question that a prima facie case was established via Martin's admission that she executed the seven promissory notes. *Nat. Bank of Ga. v. Keriaze*, 163 Ga. App. 652 (294 SE2d 688); *Q. S. King Co. v. Minter*, 124 Ga. App. 517, 518 (3) (184 SE2d 594). However, this does not mean Harrison is automatically entitled to recover the aggregate principal amount ($208,700) of the promissory notes, plus interest and attorney fees. It simply means that Martin assumed the burden of proof at trial. *Croxton v. Barrow*, 57 Ga. App. 1, 2 (194 SE 24).

" 'The standard for granting a directed verdict or a judgment notwithstanding the verdict are the same. Where there is no conflict in the evidence as to any material issue, and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed.' *Pendley v. Pendley*, 251 Ga. 30 (1) (302 SE2d 554). If there exists some admissible evidence of record regarding [any defense challenging the prima facie case of Martin's liability under the seven promissory notes,] then there would be no basis for granting directed verdict as to these issues, as the evidence would not demand a verdict in favor of [the estate]." *Truck Parts &c. v. Rutledge*, 211 Ga. App. 166 (2) (438 SE2d 404). See *Commonwealth Land Title Ins. Co. v. Miller*, 195 Ga. App. 830, 833 (395 SE2d 243); *Ohoopee Prod. Credit Assn. v. Aspinwall*, 183 Ga. App. 306 (1) (358 SE2d 884).

In the case sub judice, Martin testified that one of the $25,000 notes executed on January 5, 1978, replaced the other (purportedly defective) $25,000 note of the same date. This evidence supports Martin's defense of failure of consideration under one of the promissory notes dated January 5, 1978. OCGA § 11-3-408; *Gunter v. Hamilton Bank &c.*, 201 Ga. App. 379, 380 (411 SE2d 115). Martin testified that she paid West $1,000 in April of 1977 and $6,500 in July of 1978. This evidence supports Martin's defense of satisfaction (partial payment) under one or more of the promissory notes dated July 21, 1975, January 10, 1977, and January 5, 1978. OCGA § 13-4-40. Martin introduced evidence indicating that West satisfied the $25,000 note dated January 10, 1977, in consideration of Martin's payment of $7,972. This proof raised genuine issues of material fact as to the defense of accord and satisfaction. OCGA § 13-4-103 (a). Martin testified that

the $75,000 promissory note dated January 4, 1980, renewed the promissory notes dated January 10, 1977, January 5, 1978, and December 18, 1978. This testimony authorizes a finding that any debt remaining under the earlier promissory notes was satisfied and replaced via novation. See *Remler v. Coastal Bank*, 179 Ga. App. 25 (345 SE2d 79); *Wages v. Nat. Bank of Walton County*, 169 Ga. App. 514 (313 SE2d 771); *General Tire &c. Co. v. Solomon*, 124 Ga. App. 308 (1) (183 SE2d 573). Consequently, the evidence did not demand a judgment in the aggregate principal amount of $208,700, plus interest and attorney fees under the seven promissory notes or a judgment for $75,000 under the promissory notes dated January 10, 1977, January 5, 1978, and December 18, 1978. See *Truck Parts &c. v. Rutledge*, 211 Ga. App. 166 (2), supra. However, the same cannot be said as to Martin's liability under the $75,000 note she admitted executing as a renewal of the three earlier $25,000 loans.

"[T]he renewal of a note cuts off all defenses of which the maker then had knowledge[.] *Coast Scopitone v. Self*, 127 Ga. App. 124, 127 (3) (192 SE2d 513) (1972)[.]" *First State Bank &c. Co. v. Young*, 202 Ga. App. 566, 567 (415 SE2d 18). Consequently, the only possible defense to Martin's liability under the purported renewal note dated January 4, 1980, is her allegation that "Homer West, made a gift to her of and forgave any balance owed on any notes owed by [Martin] to him prior to his death."[5]

" ' "To constitute a valid inter vivos gift, . . . (1) (t)he donor must intend to give the gift; (2) (t)he donee must accept the gift; and (3) (t)he gift must be delivered or some act which under law is accepted as a substitute for delivery must be done." OCGA § 44-5-80. The party seeking to prove title by gift must do so by clear and convincing evidence. *McGrew v. Cooper*, 110 Ga. App. 347, 350 (3) (138 SE2d 453) (1964).' *Parker v. Peavey*, 198 Ga. App. 694, 696 (2) (403 SE2d 213)." *Daniell v. Clein*, 206 Ga. App. 377, 383 (2) (425 SE2d 344).

In the case sub judice, Martin testified that she visited her brother a few weeks before his death and that West then forgave Martin of any and all financial obligations. This testimony and Lawana Thompson LaFavor's testimony that West "told [Martin] that she did not owe him anything at all[,] she did not owe him a dime[,] they had been good to one another and that they had been close and that [Martin] owed him absolutely nothing" constitutes clear and convincing proof that West intended to forgive Martin of

---

[5] Harrison erroneously argues that Martin failed to establish a valid gift causa mortis. Martin did not testify that West's alleged debt forgiveness was intended to be absolute only upon the event of death as required by § 44-5-100 (a) (3). She testified that West's hospital-room gift was immediate.

any financial obligation to him and that Martin accepted this gift. However, Harrison argues that there was no proof that the alleged gift was delivered via an act which the law accepts as a substitute for delivery.

" 'A delivery is essential to the validity of a gift; there must be an actual, constructive, or symbolical delivery of the property to the donee, or to someone for him, in execution of the gift, and for the express purpose of consummating it. . . . This requirement is founded both on grounds of public policy and convenience, to prevent mistake, imposition, and perjury, and on the fact that, until delivery, the gift is inchoate and revocable, and the title does not pass. Without a complete delivery there can be no valid gift inter vivos, although every other step is taken that is essential to the validity of the gift; neither intention, nor mere words alone, *except where the donee at the time is in possession of tangible property*, . . . suffice without delivery.' 38 CJS, Gifts, § 18 at 794-97." (Emphasis supplied.) *Ansley v. Sunbelt Investments Realty*, 176 Ga. App. 693, 695 (2) (337 SE2d 448). "Where property is at the time of the gift in the possession of the donee, as agent for the donor or otherwise, it is not necessary that the donee should surrender to the donor his actual possession in order that the latter may redeliver it to him in execution of the gift, but a relinquishment by the donor of all dominion over the property, and recognition of the possession of the donee as being in his own right, is sufficient to perfect the gift." 38 CJS 803, Gifts, § 24. To the extent that " '[a]ctual manual delivery is not essential to the validity of a gift[, any] act which indicates a renunciation of dominion by the donor and the transfer of dominion to the donee shall constitute a constructive delivery.' OCGA § 44-5-82. Whether the donor completely relinquished control of the gift is a question of fact to be resolved by the jury. *Williams v. McElroy*, 35 Ga. App. 420, 421 (133 SE 297)." *Daniell v. Clein*, 206 Ga. App. 377, 383 (2), supra. In resolving this issue, the jury may consider that "[t]he rules as to delivery are relaxed where donor and donee are members of the same family and reside in a common residence." 38 CJS at 803.

In the case sub judice, it is undisputed that Martin, Harrison and West were close; that the three siblings periodically resided together and that Harrison and Martin had free access to West's home, particularly during the last two years of West's life. There is evidence that both Harrison and Martin provided for West's personal needs during the last two years of his life; that West unconditionally gave Harrison and Martin money during his life and that West trusted and loved his sisters. There is also evidence that West allowed Martin free access to

his financial records so that she could tend to his accounts.[6] Martin testified (during convoluted questioning) that she had possession of the seven promissory notes at the time of the purported hospital-bed bequest, explaining that the notes were then kept in her personal filing cabinet. Harrison refuted this testimony, explaining that she knew nothing about Martin's filing cabinet and that she found the promissory notes after West's death in a trunk at West's home along with other financial records. Martin explained that West gave her access to this trunk (via a key) so that she could help manage his affairs. Harrison did not dispute this fact. She simply testified that she could have acquired a key to the trunk if she so desired. This testimony and evidence of West's physical inability to perfect actual delivery of the notes at the time of his purported hospital-room bequest was sufficient to authorize a finding of delivery as contemplated by OCGA § 44-5-80. Accordingly, since there is evidence authorizing Martin's defense of debt forgiveness via inter vivos gift, judgment was not demanded against Martin for the principal sum of $75,000, plus interest and attorney fees on the promissory note dated January 4, 1980. Nonetheless, Harrison argues the jury's $41,000 verdict indicates rejection of Martin's defense of total debt forgiveness. We cannot accept this logic.

" 'The verdict may be construed in the light of the pleadings, the issues made by the evidence and the charge. (Cits.) . . . The presumptions are in favor of the validity of verdicts, and if possible a construction will be given which will uphold them. (Cit.) Even if the verdict is ambiguous . . . and susceptible of two constructions, one of which would uphold it and one of which would defeat it, that which would uphold it is to be applied. (Cit.)' *Haughton v. Judsen*, 116 Ga. App. 308, 310 (157 SE2d 297)." *West Ga. Pulpwood &c. Co. v. Stephens*, 128 Ga. App. 864, 869 (3), 870 (198 SE2d 420). In the case sub judice, it is possible the jury accepted Martin's defense of total debt forgiveness, but entered a general verdict against her for actual and punitive damages based on Harrison's claim of fraud and conversion.

The trial court did not err in denying Harrison's motions for directed verdict and for judgment n.o.v.

2. Harrison contends the trial court erred in rejecting a special verdict form proposed by her attorney in the pre-trial order and at trial and in allowing the jury to return a general verdict.

"[I]f the form of the verdict was improper, it was incumbent upon [Harrison] to make [her] objections as to irregularity of form at the time of its rendition or otherwise such technicality is waived.

---

[6] In argument supporting Harrison's fourth enumeration, it is conceded that Martin "was in control of all financial records of the deceased, Mr. West, at all times from the date of execution of the first note to the date of execution of the seventh note."

*Golosky v. Whorle*, 117 Ga. App. 335 (160 SE2d 614). This is so because a verdict may be reformed or remodeled in the presence of the jury before they have retired from the box. *Herndon v. Sims*, 7 Ga. App. 675 (3) (67 SE 835). See also *Ga. R. &c. Co. v. Tompkins*, 138 Ga. 596, 603 (75 SE 664)." *West Ga. Pulpwood &c. Co. v. Stephens*, 128 Ga. App. 864, 869 (3), 870, supra.

In the case sub judice, Harrison's attorney submitted a special verdict form and requested the trial court to "break the verdict down into separate note components with the interest and attorney's fees, if any, on each note. . . ." The trial court denied this request and the jury returned a general verdict for $41,000. The trial court asked if there were any exceptions to the form of the verdict and Harrison's trial attorney responded negatively. Consequently, Harrison waived any objection to the form of the jury's verdict. See *Fort & Turner Enterprises v. Scrocca*, 195 Ga. App. 554, 555 (3) (394 SE2d 364).

3. In her third enumeration, Harrison contends the trial court erred in allowing Martin, Lawana Thompson LaFavor and Episcopal Priest Edward Sellers to testify "to an alleged oral statement made by the deceased, Homer West, that he had forgiven the indebtedness represented by the seven promissory notes at issue in the case." This contention is without merit. "Declarations and entries made by a person since deceased against his interest and not made with a view to pending litigation shall be admissible in evidence in any case." OCGA § 24-3-8. See *Fountain v. Cabe*, 242 Ga. 787, 789 (3) (251 SE2d 529).

4. In her fourth and fifth enumerations, Harrison contends the trial court erred in denying her pre-trial motion to exclude testimony that Martin "did not receive money accompanying the execution of any note . . ." and "that one or more of the promissory notes . . . were renewal notes."

" 'One cannot complain of a result he procured or aided in causing ((cit.)) and induced error is not an appropriate basis for claiming prejudice. (Cits.)' *Hawkins v. State*, 195 Ga. App. 739 (395 SE2d 251) (1990). Accord *Littlefield v. State*, 197 Ga. App. 343 (2) (398 SE2d 375) (1990)." *Rider v. State*, 207 Ga. App. 519 (1) (428 SE2d 423). In the case sub judice, Harrison's trial attorney called Martin as his first witness and repeatedly elicited testimony regarding amounts Martin received under the promissory notes. Consequently, Harrison cannot complain that the trial court denied her pre-trial motion to exclude testimony that Martin "did not receive money accompanying the execution of any note . . ." and "that one or more of the promissory notes . . . were renewal notes."

5. Next, Harrison contends the trial court erred in admitting, over general objection, a note dated February 17, 1979 and penned by Homer West that was discovered by Harrison in West's trunk along with other business papers. The note appears to corroborate Martin's

testimony that West loaned her $6,200 on July 21, 1975, $25,000 on January 3, 1977, $25,000 on December 20, 1977, and $25,000 on December 18, 1988, and that Martin paid West $1,000 on April 7, 1977, and $6,500 on July 31, 1978. However, the note does not list debts evidenced by the $27,500 note executed on July 8, 1979, and the $75,000 note executed on January 4, 1980. The note also appears to list seven payments from West to Martin that are unrelated to the seven notes Martin executed in West's favor.

OCGA § 24-3-14 provides, in pertinent part, as follows: "(b) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event shall be admissible in evidence in proof of the act, transaction, occurrence, or event, if the trial judge shall find that it was made in the regular course of any business and that it was the regular course of such business to make the memorandum or record at the time of the act, transaction, occurrence, or event or within a reasonable time thereafter. (c) All other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight; but they shall not affect its admissibility. (d) This Code section shall be liberally interpreted and applied."

In the case sub judice, both Martin and Harrison testified that the note was made by Homer West and Harrison testified that she found the note in a trunk where West kept his business papers. Further, it appears the note relates "to the act sued on [in the case sub judice and was] introduced in evidence and while there was no testimony directly that [the note was] kept and made in the regular course of business, [Harrison's] testimony . . . concerning [West's] keeping [of such hand-written notes] authorized such a finding, especially where there was no objection to the introduction of the [note] on the ground that it was not shown that [it was] kept in the regular course of business." *Guthrie v. Luke*, 98 Ga. App. 88 (1) (104 SE2d 921). Consequently, the note was admissible under the business record exception to the rule against the admission of hearsay. OCGA § 24-3-14. Compare *Goss v. Mathis*, 188 Ga. App. 702 (373 SE2d 807).

6. Harrison contends in enumeration seven the trial court erred in allowing "testimony of Joneal Lee, the attorney for the deceased, Homer West, relative to any request for dragnet language to be added to a Deed to Secure Debt to be signed by [Martin] or any representations made by the said Homer West relative thereto. . . ." This enumeration is without merit. A party must show harm as well as error to prevail on appeal. *Ideal Pool Corp. v. Champion*, 157 Ga. App. 380, 385 (6) (277 SE2d 753). Harrison fails to show how admission of any such testimony by Attorney Joneal Lee was harmful to her cause.

7. Harrison contends in her eighth enumeration that the trial court erred in allowing Attorney Joneal Lee to testify that it was his "impression [at the time West executed his Last Will and Testament on September 5, 1979,] that [Homer West] was giving everything in his will to his sister Frankie [Harrison] because [West] felt like he'd already given Ann [Martin] enough."

Harrison's attorney asserts several arguments in support of this enumeration, but the only objection when the testimony was initially injected at trial was as follows: "I object to any paraphrase or impression that Mr. Joneal might have. He said he couldn't remember and he said he didn't make any notes. And I object to any further opinion testimony without some basis for that." Pretermitting the sufficiency of this objection as a basis for excluding the above quoted testimony of Attorney Joneal Lee, the trial transcript reveals that Attorney Lee's "impression" of Homer West's reasons for naming Harrison as the sole beneficiary under his Last Will and Testament was amply supported by Attorney Lee's recollection of the facts as related in a "conversation that [he] had . . ." with his client, Homer West. *Marshall v. Pierce*, 136 Ga. 543, 546 (3) (71 SE 893). Other argument raised in this enumeration has been considered and is found to provide no basis for reversal.

8. In her final enumerations, Harrison contends the trial court erred in allowing Attorney Joneal Lee to testify that "from the conversation that [he] had [with Homer West, he] never expected . . . the notes [executed by Martin] to be repaid." This enumeration is without merit for the reasons stated in Division 7 of this opinion.

### Case No. A93A0414

9. Martin contends the trial court "erred in denying [her] motion for judgment notwithstanding the verdict in that the uncontradicted evidence in this case demonstrated that a valid gift was made in contemplation of death pursuant to O.C.G.A. § 44-5-100 (a)." This contention is not supported by the evidence. Martin did not testify that West's alleged debt forgiveness was intended to be absolute only upon the event of death as required by § 44-5-100 (a) (3). She testified that West's hospital room gift was immediate.

10. Martin contends the trial court "erred in denying [her] motion for judgment notwithstanding the verdict in that the uncontradicted evidence . . . demonstrated that the obligation [under the three $25,000 promissory notes] being sued upon had been settled and satisfied." This contention is without merit.

" 'The standard for granting a directed verdict or a judgment notwithstanding the verdict are the same. Where there is no conflict in the evidence as to any material issue, and the evidence introduced,

with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed.' *Pendley v. Pendley*, 251 Ga. 30 (1) (302 SE2d 554). If there exists some admissible evidence of record regarding [Martin's liability under the three promissory notes,] then there would be no basis for granting directed verdict as to these issues, as the evidence would not demand a verdict in [her] favor. . . ." *Truck Parts & Service v. Rutledge*, 211 Ga. App. 166 (2), supra.

In the case sub judice, Martin admitted executing the $75,000 note dated January 4, 1980, explaining that it renewed the three $25,000 promissory notes dated January 10, 1977, January 5, 1978, and December 18, 1978. This testimony authorizes, but does not demand, a finding that any debt remaining under the earlier promissory notes was satisfied and replaced via novation. See *Remler v. Coastal Bank*, 179 Ga. App. 25, supra; *Wages v. Nat. Bank of Walton County*, 169 Ga. App. 514, supra; *General Tire &c. Co. v. Solomon*, 124 Ga. App. 308 (1), supra. Consequently, assuming the jury accepted the above testimony as a defense to Martin's liability under the three earlier promissory notes, Martin's claim that the three $25,000 notes were "settled and satisfied" is useless as any defense Martin may have had under the three earlier promissory notes was cut off at the time she executed the purported renewal note dated January 4, 1980. *First State Bank &c. Co. v. Young*, 202 Ga. App. 566, 567, supra. Consequently, the evidence did not demand a verdict in favor of Martin on the three $25,000 promissory notes dated January 10, 1977, January 5, 1978, and December 18, 1978, and the trial court did not err in denying Martin's motion for judgment n.o.v.

*Judgment affirmed in Case No. A93A0413. Beasley, P. J., and Cooper, J., concur. Judgment affirmed in Case No. A93A0414. Cooper, J., concurs. Beasley, P. J., concurs in judgment only.*

DECIDED MAY 27, 1994.

*Geiger & Pierce, James N. Geiger, R. Avon Buice*, for appellant.
*Hall, Bloch, Garland & Meyer, Benjamin M. Garland*, for appellee.