30589.   FELDER *v.* FELDER *et al.,* administrators.

Decided November 18, 1944. Rehearing denied December 13, 1944.

*Phillip Sheffield, Vance Custer,* for plaintiff.

*A. H. Gray,* for defendants.

*Lowrey Stone, Orabel Rabon,* for persons at interest, not parties.

BROYLES, C. J. (After stating the foregoing facts.) The controlling question here is: Under the allegations of the petition was the $5000 check revoked because of the failure to cash the check before the death of plaintiff's husband? "As in the case of a note, the gift of the donor's own check is but the promise of a gift and does not amount to a completed gift until payment or acceptance by the drawee. As shown infra § 60, at any time prior thereto, the donor may revoke it by stopping payment, and it is ipso facto revoked by the death of the donor. The gift of a check becomes complete when, in the donor's lifetime, it is paid, certified, or accepted by the drawee, or negotiated for value to a third person." 38 C. J. S. 842, § 55. And in 24 Am. Jur. 779, § 95, it is stated: "The rule in most jurisdictions appears to be settled that the donor's check, prior to acceptance or payment by the bank, is not the subject of a valid gift either inter vivos or causa mortis. The difficulty with respect to a gift of the donor's check, if the check does not operate as an assignment, is that the mere delivery of the check to the donee or to some other person for him does not place the gift beyond the donor's power of revocation, prior to payment or acceptance. Moreover, there is the further consideration, if the check does not operate as an assignment, that the death of the drawer works a revocation of the check, so that where the check is intended as a gift causa mortis and the donor dies before payment or acceptance, the death revokes the gift. Thus, the death of the drawer effects a revocation of the alleged gift of a check not presented for payment until after such death."

Section 189 of the negotiable instruments law reads: "A check

of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check." And in Brannan's Negotiable Instruments Law (6th ed.), pp. 1165-1169, it is said: "This section [189] has changed the law in those states in which a check had been held to be an assignment *pro tanto* of the funds of the drawer in the drawee bank. Therefore, the administrator of the drawer can recover from the holder the amount of a check collected from the bank after the drawer's death. . . Where a depositor issues a check against his general deposit account, such check is not an equitable assignment of the fund standing to the credit of the depositor, even where the depositor made the deposit for the purpose of paying the check. . . Before the negotiable instruments law, the question whether a check was an assignment of any part of the drawer's deposit had been considered by the courts, both with respect to the rights of the holder against the drawee and the rights of the holder against the drawer or the latter's creditors or estate, and there had been differences of opinion on both questions. Before the statute, the weight of authority was that a check was not an assignment in either respect. The purpose of the uniform negotiable instruments law was to abrogate this conflict, and when the statute declares that a check of itself does not operate as an assignment, to say that it does so operate in any case is to declare the exact opposite of the statute. . . This section [189] is applicable to a check for the whole of the drawer's deposit, and the delivery of such a check as a gift did not constitute an assignment of the drawer's funds and was revoked by the death of the donor before collection."

In Basket *v.* Hassel, 107 U. S. 602, 614 (2 Sup. Ct. 415, 27 L. ed. 500), the court held that in case of a gift inter vivos the document or paper delivered by the donor to the donee must be an instrument that divests the donor of all present control and dominion over the fund represented by the instrument, absolutely and irrevocable, and if the instrument fails to do so the gift is invalid.

In Throgmorton *v.* Grigsby's Adm'r, 124 Ky. 512 (99 S. W. 650), where Grigsby delivered to a young woman, to whom he was greatly attached, a check for $1000, and where he died before

the check was cashed, the court held that the gift had never been completed and quoted with approval the following ruling from Simmons *v.* Cincinnati Savings Society, 31 Ohio St. 457 (27 Am. R. 521): "The plaintiff claims as the payee of a check delivered to her by the drawer, who intended thereby to transfer to the plaintiff, by way of gift, the fund on which the check was drawn; and the question is whether before the payment or acceptance of the check by the drawee the gift was executed. It seems clear to us that until the check was either paid or accepted the gift was incomplete; and that, in the absence of such payment or acceptance, the death of the drawer operated as a revocation of the check. It is well settled that, in order to constitute a valid gift, there must be a complete delivery of the subject of the gift, either actual or constructive. The check in the present instance was a mere order or authority to the payee to draw the money; and, being without consideration, it was subject to be countermanded or revoked while it remained unacted on in the hands of the payee." And the court in the Kentucky case, just cited, after citing other authorities, said: "From these authorities it is clear that the issual and delivery of the check by Grigsby to appellant did not operate as a delivery of the money to her. She never had the possession of it either actually or constructively, and it required this to make the gift complete. From the facts as presented in this record it is evident that Grigsby had a great fondness for appellant and desired to give her a portion of his estate; but, unfortunately for her, he did not accomplish his purpose in a way so as to make it binding upon himself or his estate."

In Foxworthy *v.* Adams, 136 Ky. 403 (1) (124 S. W. 381, 27 L. R. A. (N. S.) 308), where Foxworthy gave his check for $500 to his wife as a gift and died before it was paid or accepted by the bank, it is said: "A gift of one's check is incomplete until the check has been paid or accepted by the bank, for a check is a mere order to the payee to draw the amount called for, and, when given without consideration, it may be revoked by the maker so long as it remains unacted on in the hands of the payee."

In Zehner *v.* Zehner's Estate, 74 Ind. App. 334 (129 N. E. 244), where a check signed by the donor as maker was delivered to the payee, and the donor died before the check was paid or accepted by the bank, the court held: "While there is no direct

allegation that the check was delivered as a gift, the facts are alleged and show conclusively that it was delivered as a gift. No action could have been maintained on the check against the maker in his lifetime, nor can one be maintained against his estate after his death."

In Burrows *v.* Burrows, 240 Mass. 485 (134 N. E. 271, 20 A. L. R. 174), the court said: "The general rule is well established, in this and many other jurisdictions, that the mere delivery of a donor's personal check or promissory note of itself does not constitute a valid gift, as it is revocable at any time before its presentation for payment, and is revoked by the death of the donor."

In Martin *v.* Martin, 89 Ill. App. 147 (1-6), it is said: "A note executed without consideration, or solely from love and affection, intended as a mere gift, can not form the ground of recovery by the donee in an action at law against the donor. A gift is revocable till executed, and a note intended as a gift from the maker to the payee is but a promise to make a gift, and the gift is not executed till the note is paid. The same applies equally to checks as a gift by drawer to payee. In order to constitute a valid gift, there must be a complete delivery of the subject of the gift, either actual or constructive. A check delivered by drawer to payee as a mere gift, and not paid or accepted in the lifetime of the drawer, is revoked by his death, and is not a valid claim against his estate."

We could cite many other cases to the same effect, and it clearly appears that the great weight of authority in our sister States supports the foregoing rulings. However, able counsel for the plaintiff in error contend that the ruling is otherwise in this State, because of the language employed in sections 48-101 and 48-103 of our Code. Those sections read: "To constitute a valid gift, there shall be the intention to give by the donor, acceptance by the donee, and delivery of the article given or some act accepted by the law in lieu thereof. Actual manual delivery shall not be essential to the validity of a gift. Any act which shall indicate a renunciation of dominion by the donor, and the transfer of dominion to the donee, shall be a constructive delivery." In our opinion the wording of those sections has not changed the pre-existing law of Georgia. In *Harrell* v. *Nicholson,* 119 *Ga.* 458, 460 (46 S. E. 623), the Supreme Court stated that the section

of our Code relating to the law of "gifts" was "but a codification of the common law on the subject;" and in the same case the court further said: "There must be in every case a delivery of some sort, such a delivery as would put it beyond the power of the donor to revoke the gift. He must relinquish all dominion and control over it as owner, and part absolutely with the title," and, in support of the ruling, cited *Evans* v. *Lipscomb*, 31 *Ga.* 71 (3), *Mims* v. *Ross*, 42 *Ga.* 121 (2), and *Smith* v. *Peacock*, 114 *Ga.* 691 (40 S. E. 757, 88 Am. St. R. 53). Furthermore, section 14-1707 of our Code states: "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder unless and until it accepts or certifies the check."

It is true that in *Elders* v. *Griner*, 40 *Ga. App.* 649 (4 a) (150 S. E. 857), this court held: "Where the gift of a bank check is accepted, the failure of the donee to present it to the bank for payment before the death of the donor does not operate as a revocation of the gift. *Philpot* v. *Temple Banking Co.*, 3 *Ga. App.* 742 (2 d), 747 (60 S. E. 480). Especially is this true where the gift was not made by the donor in expectation of his death." No other authority was cited by the court, and the decision in the *Philpot* case does not support the ruling in the *Elders* case, for, in the former case the donor delivered to the donee, not only a bank check, but a *certificate of deposit* issued by the bank, and this court held that the *delivery of the certificate of deposit* constituted a valid gift, and "the subsequent execution and delivery of the check for the exact amount of the certificate did not affect the validity of the gift;" and the court further held (headnote 1) that "a certificate of deposit is a subsisting chose in action and represents the fund it describes, so that a delivery of it as a gift constitutes an equitable assignment of the money for which it calls," and in its opinion recognized the general rule of force in this State that a gift of the donor's *own ordinary* check is not a valid gift where it is not paid before the donor's death, and that the death of the drawer revokes the authority of the drawee to pay the check, unless it has been certified. We are satisfied that the decision in the *Elders* case is contrary to the decisions of the Supreme Court and this court, and on a review thereof, it is overruled.

In *MacIntire* v. *Raskin* 173 *Ga.* 746 (1) (161 S. E. 363), the court said: "It is well settled in this State by the decisions of this court, and now by statute, that an unaccepted check drawn in the usual form, not upon any particular fund, or not using words indicating a transfer of the whole or any part of the amount standing to the credit of the drawer, does not of itself amount to an assignment of the money to the credit of the drawer." And in the opinion in that case, the court cited, as authority to support its headnote, section 189 of the negotiable instruments law.

The plaintiff in the instant case fails to allege that her husband had any deposit of money in the First State Bank when the check was presented to it for payment, or when the check was presented to the defendants for payment, or at any other time. Assuming, however, that such a deposit existed when the check was delivered to her, the petition fails to allege that the deposit was a special one; and "a deposit is presumed to be general in the absence of an agreement to the contrary." Code, § 12-303. Moreover, the petition, properly construed (most strongly against the pleader), shows that the deposit, if any, was a general one. Furthermore, the petition, so construed, clearly shows that the plaintiff never had possession or control of any portion of her husband's funds in the bank, or any dominion over it, either actually or constructively. In our opinion, the sustaining of the general demurrer to the petition was not error.

*Judgment affirmed. MacIntyre and Gardner, JJ., concur.*