70943. ANSLEY v. SUNBELT INVESTMENTS
REALTY, INC. et al.
(337 SE2d 448)

POPE, Judge.

Appellees Sunbelt Investments Realty, Inc., Sunbelt Investments, Inc., and O. L. Ansley (as administrator of the estate of Hugh Ansley) brought this action against appellant Laurie Dunn Ansley seeking temporary and permanent injunctive relief prohibiting appellant from taking delivery or possession of a certain 1984 Ferrari automobile. A temporary, 30-day injunction was granted, but has since expired and is not at issue in this appeal. The petition was later amended by Sunbelt Investments, Inc. to include a prayer for relief that title to the 1984 Ferrari be decreed to be in that corporation. Following discovery all parties moved for summary judgment, which was granted appellees and denied appellant.[1]

---

[1] Due to a potential conflict of interest in representing both the corporate appellees and the estate of Hugh Ansley, counsel for appellees sought direction from the trial court and,

The facts are essentially without dispute.[2] Hugh Ansley was the sole stockholder and chief operating officer of Sunbelt Investments, Inc. He was killed in an automobile accident on July 11, 1983. Shortly before his death, Hugh Ansley mailed two checks totaling $40,000 to one Michael Dyke in West Germany for the purchase of a Ferrari automobile. The checks were drawn on the escrow account of Sunbelt Investments, Inc. Although the checks indicate that the expenditures were for "inventory" and/or "equipment," accompanying correspondence discloses that the Ferrari was being purchased as a gift, a birthday present, for Hugh Ansley's wife, appellant Laurie Dunn Ansley. However, the transaction was not completed prior to Hugh Ansley's death. Appellant testified that a week or so after Hugh Ansley's death she received a telephone call from one David Steakley, apparently an associate of Michael Dyke: "Well, he said that they still had not found a Ferrari like Hugh had asked him to obtain for him and what did I think about continuing to wait for a later model to come in . . . And he said that he knew it was Hugh's intention for me to have the automobile and he was willing to go on and acquire it for me." Appellant also testified that she was "confident" that the checks drawn on the escrow account of Sunbelt Investments, Inc. paid for the subject Ferrari. Apparently in December 1983 or January 1984 the subject Ferrari arrived at the port of Jacksonville, Florida under a bill of lading directed to appellant.

1. Appellant's first enumeration challenges the trial court's summary judgment order on the ground that appellees could not set aside pursuant to OCGA § 14-2-153 a legal conveyance made by the sole shareholder, director and president of appellee Sunbelt Investments, Inc. to himself and then to appellant. The statute provides inter alia that a corporation may bring an action against its directors or officers

---

upon the court's finding such a conflict of interest, withdrew as representative of the estate. The estate was directed to retain other counsel, but there is no indication in the record that this was done. Our review of the record further discloses no claim upon nor interest in the subject automobile on the part of Sunbelt Investments Realty, Inc. In light of these circumstances and the current status of the pleadings, we will assume for the purposes of this appeal that both Sunbelt Investments Realty, Inc. and O. L. Ansley, as administrator of the estate of Hugh Ansley, have abandoned any and all claims they may have had to the subject automobile.

Notwithstanding the very general language of the summary judgment order, it is apparent that the issue of permanent injunctive relief originally sought by all appellees has likewise been abandoned, and in any event is now moot, it appearing that the intended effect of the trial court's order has provided an adequate remedy at law by granting the only prayer for relief which was actively pursued by any of the appellees, viz, that title to the subject automobile be decreed to be in Sunbelt Investments, Inc. See generally OCGA § 23-1-4. See also *Mallory Bros. &c. v. Cowart*, 90 Ga. 600, 605-07 (16 SE 658) (1892).

[2] We assume that the apparent inconsistencies in the record as to the dates of certain transactions are due merely to typographical errors which escaped detection during proofreading.

"[t]o set aside an unlawful conveyance, assignment, or transfer of corporate assets where the transferee knew of its unlawfulness and is made a party to the action." OCGA § 14-2-153 (a) (3). The complaint in this case makes no claim against a director and/or officer of Sunbelt Investments, Inc., the sole director and officer thereof at the times pertinent to a cause of action under OCGA § 14-2-153 being Hugh Ansley, who died prior to the filing of the complaint. Rather, the administrator of the estate of Hugh Ansley is a party plaintiff to this action.[3] Assuming arguendo that the complaint here does not set forth a cause of action under OCGA § 14-2-153, nevertheless it is clear that appellees are alleging a right of possession and seeking title to the subject Ferrari (in contradiction to appellant's claim therefor), and thus have adequately set forth a cause of action in trover. See generally *Powell v. Riddick*, 89 Ga. App. 505, 508 (80 SE2d 70) (1954). It follows that the various arguments raised by appellant's first enumeration of error, which challenge the evidence and pleadings as they relate to OCGA § 14-2-153, set forth no ground for reversal.

2. Appellant's second enumeration cites as error the trial court's inherent ruling as a matter of law that Hugh Ansley's inter vivos gift of the Ferrari to appellant was not complete and valid prior to the time of his death. We will assume for the purposes of our discussion of this issue that Hugh Ansley was authorized to utilize the corporate funds of Sunbelt Investments, Inc. for the purpose of purchasing an automobile as a gift for his wife, appellant herein. "To constitute a valid inter vivos gift, the following criteria must be met: (1) The donor must intend to give the gift; (2) The donee must accept the gift; and (3) The gift must be delivered or some act which under law is accepted as a substitute for delivery must be done." OCGA § 44-5-80. As to these three criteria, only the matter of delivery is at issue in this case.

"A delivery is essential to the validity of a gift; there must be an actual, constructive, or symbolical delivery of the property to the donee, or to someone for him, in execution of the gift, and for the express purpose of consummating it . . . This requirement is founded both on grounds of public policy and convenience, to prevent mistake, imposition, and perjury, and on the fact that, until delivery, the gift is inchoate and revocable, and the title does not pass. Without a complete delivery there can be no valid gift inter vivos, although every other step is taken that is essential to the validity of the gift; neither intention, nor mere words alone, except where the donee at the time is in possession of tangible property, or of tangible evidence of a right

---

[3] O. L. Ansley, in addition to being the administrator of the estate of Hugh Ansley, was elected president and chief operating officer of Sunbelt Investments, Inc. following the death of Hugh Ansley and prior to the filing of the complaint in this case.

to incorporeal property . . . suffice without delivery." 38 CJS, Gifts, § 18 at 794-97. "In any event, a delivery to be sufficient to support a gift must be absolute and unqualified; it must transfer possession to the donee, and vest in him a present and irrevocable title; it must vest the donee with, and divest the donor of, control and dominion over the property." Id. § 19 at 798. See *Harrell v. Nicholson*, 119 Ga. 458 (46 SE 623) (1904); *Burt v. Andrews*, 112 Ga. 465 (37 SE 726) (1900); *Lanier v. Holt*, 18 Ga. App. 185 (1) (89 SE 182) (1916); *Cowdrey v. Barksdale*, 16 Ga. App. 387 (1, 2) (85 SE 617) (1915). "Although delivery is essential to the validity of a gift, it need not be simultaneous with the words of gift, but may either precede or follow them . . . If it succeeds such words, it makes perfect that which was before inchoate. Delivery may follow at any time before the death of the donor and before he revokes the gift. *However, to be effective, delivery must be made during the donor's lifetime*." (Emphasis supplied.) 38 CJS, Gifts, § 27 at 806. See, e.g., *Helmer v. Helmer*, 159 Ga. 376 (1) (125 SE 849) (1924), and cits.; *Knight v. Jackson*, 156 Ga. 165 (2) (118 SE 661) (1923); *Brooks v. Brooks*, 54 Ga. App. 276 (1) (187 SE 687) (1936).

The undisputed facts of record disclose that the subject Ferrari had not yet been purchased at the time of Hugh Ansley's death, and thus could not possibly have been delivered to appellant during his lifetime. Compare *McKinney v. Timber Equip.*, 160 Ga. App. 900 (288 SE2d 610) (1982); *Williams v. McElroy*, 35 Ga. App. 420 (2) (133 SE 297) (1926). Under the circumstances in this case, and in light of the above-cited authority, we find that the trial court properly granted appellees' motion for summary judgment, effectively placing title and the right of possession to the subject Ferrari in appellee Sunbelt Investments, Inc.

*Judgment affirmed. Deen, P. J., and Beasley, J., concur.*

DECIDED NOVEMBER 4, 1985.

*Donald W. Huskins*, for appellant.
*Hulane E. George*, for appellees.