## A11A1382. LONGSTREET v. DECKER.
(717 SE2d 513)

PHIPPS, Presiding Judge.

Joseph Decker, as executor of the estate of Marjean Smith, filed an action against Kathy Longstreet after Longstreet removed from a bank safe deposit box cash that Decker claimed belonged to the estate. Longstreet appeals from the trial court's denial of her motion for summary judgment and the grant of partial summary judgment to Decker (hereafter, the estate). For the reasons that follow, we affirm.

Longstreet (formerly Kathy Downs) was Smith's niece. In 1991, Smith and Longstreet entered into a contract to lease a safe deposit box from The Brand Banking Company (the Bank). The contract bore the heading "THE BRAND BANKING COMPANY[,] Lawrenceville, Georgia[,] JOINT CONTRACT[,] EITHER/ANY TO HAVE ACCESS ALONE," and set forth the terms of leasing the safe deposit box from the Bank. The lease contract named Smith and Longstreet as joint tenants of a particular safe deposit box and provided in part:

> It is agreed that any one of us alone shall be entitled to access to said box and control over its contents and shall have the right to surrender said box and cancel this contract on behalf of all. . . .
>
> In the event of the death of any of us, the Bank . . . shall afford access to such box to the survivor or survivors of us, or any one of them.

The contract, which was signed by Smith, Longstreet, and a witness, also included provisions governing the parties' obligations in renting the box, an acknowledgment that the lessees received two keys to the box, and various other terms, conditions, and rules of the Bank.

Smith placed cash in the safe deposit box. Longstreet did not know what was in the box, just that the contents were "valuable." Longstreet acknowledged that the contents of the box were Smith's property, though she understood that they were to be given to her upon Smith's death. Smith had told Longstreet to "hold on to [the key]," and that "if anything ever happened to her, that I should remove the contents of the safe deposit box."[1] Longstreet understood the "if [anything] were to happen to her" language to mean upon Smith's death. And she understood Smith's words to mean that "whatever was in that safe deposit box belonged to me." Smith died on November 11, 2005. Before Smith's death, Longstreet never accessed the box.

On November 17, 2005, Longstreet went to the Bank and, unable to locate her key, had the safe deposit box drilled open. Longstreet removed the contents, which consisted of several bundles of cash; the evidence is in conflict as to the amount. Longstreet refused the estate's demands to return the cash.

Alleging that the cash removed from the box belonged to the estate, the estate sued Longstreet based on theories of conversion and money had and received. Longstreet moved for summary judgment, contending that the language of the lease contract authorized her to have "access to said box and control over its contents." She argued further that she had survivorship rights in the contents of the safe deposit box because the contract provided that "[i]n the event of the death of any of us, the Bank . . . shall afford access to such box to the survivor or survivors of us, or any one of them." The estate filed a cross-motion for partial summary judgment, contending that Longstreet did not own the contents of the box inasmuch as the contract did not show that she owned them, and there had been no inter vivos gift of the contents.

Holding that the contract governed the rental of the safe deposit box and not the ownership of the contents of the box, the court denied Longstreet's summary judgment motion. The court granted the estate's motion for partial summary judgment as to liability, noting that it was undisputed that any purported gift of the contents was not to be completed until Smith's death. The court reserved for

---

[1] See footnote 26, infra, regarding the admissibility of Smith's statements concerning the property.

trial the issue of damages, finding that genuine issues of material fact remained regarding the amount of money removed from the safe deposit box.

"Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] In our de novo review of the grant or denial of a motion for summary judgment, we view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.[3]

1. Longstreet argues that she was entitled to summary judgment because the unambiguous language of the lease contract "provide[d] [her] with the ownership of the contents of the box." She cites the contract language that authorized her to have "access to said box *and control over its contents*"[4] and provided that "[i]n the event of the death of any of us, the Bank . . . shall afford access to such box to the survivor or survivors of us, or any one of them."

> [C]onstruction of a contract is a question of law for the court. Thus, the construction of the provisions of this lease, as with other contracts, is generally one for the court to determine as a matter of law, and when a question of law is at issue, we owe no deference to the trial court's ruling and apply the "plain legal error" standard of review.[5]

> The first rule of contract construction is to determine the parties' intent, and if the language is clear the contract shall be enforced [according to its clear terms]. In fact, no construction is even permitted when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation.[6]

"When the language employed by the parties in their contract is plain, unambiguous, and capable of only one reasonable interpretation . . . the language used must be afforded its literal meaning and

---

[2] See *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010) (citation and punctuation omitted).

[3] See id. at 624 (1) (a); *Werner Enterprises v. Lambdin*, 307 Ga. App. 813, 814 (706 SE2d 185) (2011).

[4] (Emphasis supplied by Longstreet in her appellate brief.)

[5] *Record Town v. Sugarloaf Mills*, 301 Ga. App. 367 (1) (687 SE2d 640) (2009) (citations and punctuation omitted).

[6] Id. at 368 (2) (citations and punctuation omitted).

plain ordinary words given their usual significance."[7]

We agree with Longstreet and the estate that the language of the contract was unambiguous. The contract, which governed the leasing of the safe deposit box from the Bank, contained no terms purporting to establish *ownership* of the contents of the box. It gave, in pertinent part, Smith and Longstreet the right to access and *control* the contents of the box. The literal meaning of the verb "control" is "to exercise restraining or directing influence over: regulate, curb: dominate, rule: have power over."[8] In contrast, the literal meaning of the word "ownership" is "the state, relation, or fact of being an owner: lawful claim or title;"[9] an "owner" is "one that owns: one that has the legal or rightful title whether the possessor or not."[10] There is no evidence that "control," as used in this contract, was a technical word, word of art, or word with a particular trade or business meaning that was understood to exclude the usual and common meaning.[11] Further, the contract's survivorship language cited by Longstreet concerned the Bank's obligation to provide *access* to the safe deposit box upon either lessee's death; it did not address ownership of the contents.

Longstreet's reliance on cases from other states as instructive is misplaced because, inter alia, the cited cases involved contract language that specifically governed ownership of the contents of the safe deposit boxes.[12] The contract in this case contained no such language.

Notably, in her brief Longstreet questions why cash in a safe deposit box passes to a decedent's estate for distribution, while cash in a bank account does not. Longstreet cites no authority for the

---

[7] *Municipal Elec. Auth. of Ga. v. Gold-Arrow Farms,* 276 Ga. App. 862, 866 (1) (625 SE2d 57) (2005) (citation and punctuation omitted).

[8] Webster's Third International Dictionary (1981).

[9] Id.

[10] Id.

[11] See *Municipal Elec. Auth. of Ga.,* supra at 868 (1).

[12] See *Miller v. Buck,* 271 FSupp. 822, 825-826 (W.D. Va. 1967) (finding valid inter vivos gift where lease agreement expressly provided that the lessees were joint owners of the present and future contents of a safe deposit box and that in the event of the death of either lessee, the survivor had the right to withdraw said contents); *Brown v. Navarre,* 64 Ariz. 262, 264 (169 P2d 85) (1946) (enforcing terms of lease agreement for a safe deposit box which expressly provided that all property placed in the box was the joint property of both lessees and upon death of either passed to the survivor); *In re Estate of Koester,* 286 Ill. App. 113, 114 (3 NE2d 102) (1936) (finding lessee had right of survivorship in contents of a safe deposit box where lease agreement expressly warned lessees not to execute agreement unless they were joint owners of the contents of the box and desired the survivor to become sole owner thereof in case of the death of one of them); *Young v. Young,* 126 Cal. App. 306, 313 (14 P2d 580) (1932) (enforcing terms of written contract between spouses which expressly provided that the contents of a safe deposit box were joint property and that the title and right of ownership thereto rested in the survivor).

premise of her query, but we presume it is based on OCGA § 7-1-813 (a), which provides that sums remaining on deposit at the death of a party to a joint account belong to the surviving party as against the estate of the decedent (unless there is clear and convincing evidence of a different intent at the time the account was created).[13] The leasing of a safe deposit box does not come within the definition of a joint account for purposes of OCGA § 7-1-813.[14]

Accordingly, the court did not err in denying Longstreet's motion for summary judgment based on her claim that the contract governing the leasing of the safe deposit box granted her ownership rights in the contents of the box.

2. Longstreet contends the court erred in granting partial summary judgment to the estate based on its determinations that (a) the contract language did not establish that Longstreet owned the contents of the box and (b) there was no evidence that an inter vivos gift was made. As discussed in Division 1,[15] the contract language did not support Longstreet's ownership claim; thus, the court did not err in granting partial summary judgment to the estate based on the absence of contract language establishing ownership.

As to whether an inter vivos gift was made, Longstreet, who acknowledged that the contents of the box were Smith's, argues that summary judgment was improper because genuine issues of material fact remained as to Smith's intentions. We disagree.

"A gift inter vivos operates, if at all, in the donor's lifetime, immediately and irrevocably; it is a gift executed; no further act of parties, no contingency of death or otherwise, is needed to give it effect."[16] To constitute a valid inter vivos gift, the following criteria must be met: (1) the donor must intend to give the gift; (2) the donee must accept the gift; and (3) the gift must be delivered or some act which under law is accepted as a substitute for delivery must be done.[17] To be effective, *delivery must be made during the donor's lifetime.*[18] To be sufficient to support a gift, a delivery also "must be absolute and unqualified; it must transfer possession to the donee, and vest in him a present and irrevocable title; it must vest the donee

---

[13] OCGA § 7-1-813 (a); *Daniell v. Clein*, 206 Ga. App. 377, 382 (1) (425 SE2d 344) (1992).

[14] OCGA § 7-1-810 (4) defines "joint account" as an account payable on request to one or more of two or more parties, whether or not mention is made of any right of survivorship. OCGA § 7-1-810 (1) defines "account" as a contract of deposit of funds between a depositor and a financial institution and includes a checking account, savings account, certificate of deposit, share account, and other like arrangements.

[15] Supra.

[16] *NeSmith v. Ellerbee*, 203 Ga. App. 65, 66-67 (1) (416 SE2d 364) (1992) (citation and punctuation omitted).

[17] OCGA § 44-5-80.

[18] *Ansley v. Sunbelt Investments Realty*, 176 Ga. App. 693, 696 (2) (337 SE2d 448) (1985).

with, and divest the donor of, control and dominion over the property."[19] Delivery is required because, inter alia, until delivery, the gift is inchoate and revocable, and title does not pass.[20] The burden is on the person claiming the gift to prove all essential elements of a gift.[21]

> [T]o prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, so that the party is entitled to judgment as a matter of law. . . . [A] defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case, but may point out by reference to the evidence in the record that there is an absence of evidence to support any essential element of the nonmoving party's case.[22]

To support its position that no inter vivos gift of the contents of the safe deposit box was made because there was no delivery, the estate points to the following: Smith retained access to and control over the contents of the box and could have removed the contents at any time before her death; and Smith had instructed Longstreet to remove the contents of the box upon her death.

Longstreet contends that delivery was shown by the following: Smith told her to remove the contents upon her death and that "whatever was in that safe deposit box belonged to [Longstreet]"; Longstreet was provided with a key to the box; and she and Smith had a close relationship.

Viewing the record evidence in the light most favorable to Longstreet as nonmovant, and drawing all reasonable inferences in her favor,[23] the estate is nonetheless entitled to summary judgment. The evidence was undisputed that Smith retained access to the box (albeit shared), and the contents of the box were subject to being reclaimed by Smith at any time prior to her death. There was no evidence that full control or power over the property vested in Longstreet before Smith's death,[24] or that Smith renunciated domin-

---

[19] Id. (citations and punctuation omitted); *Felder v. Felder*, 71 Ga. App. 860, 866 (32 SE2d 550) (1944) (gift requires such a delivery as would put it beyond the power of the donor to revoke the gift; donor must relinquish all dominion and control over it as owner, and part absolutely with the title).

[20] *Ansley*, supra.

[21] *Brock v. Brock*, 279 Ga. 119, 120 (2) (610 SE2d 29) (2005).

[22] *Cowart*, supra at 623 (1) (a) (citations and punctuation omitted).

[23] See id.

[24] See *Daniell*, supra at 383 (2).

ion and transferred it to Longstreet.[25] Assuming that Smith's statements to Longstreet regarding the purported gift were admissible as evidence,[26] and neither party contends that the statements were not admissible, those statements did not show delivery during Smith's life. And while Longstreet states that she had a close relationship with Smith, such evidence did not lessen her burden of proving delivery because there is no evidence that she lived with Smith.[27] The evidence did not present any questions of material fact to be resolved by a jury.[28]

Longstreet's reliance on *Fotiatis v. Clemmons*[29] is misplaced. In that case, there was evidence to support the theory that the donor had delivered the contents of a safe deposit box to the donee before his death; namely, the donee had both keys to the box and was with the donor every time he opened the box, the box contained not only cash but a savings certificate made payable to the donor *or* the donee, and the donee had lived with the donor for a number of years and taken care of him in the latter years of his life.[30] In the instant case, however, there was no evidence that the purported donor made delivery of the contents of the box prior to her death. The trial court properly granted the estate's motion for partial summary judgment.[31]

*Judgment affirmed. Andrews and McFadden, JJ., concur.*

DECIDED OCTOBER 11, 2011.

*McFarland & McFarland, Robert P. McFarland*, for appellant.

---

[25] Id.; compare *Bates v. Bates*, 163 Ga. App. 268, 271 (3) (293 SE2d 515) (1982).

[26] See OCGA § 24-3-8 ("[d]eclarations and entries made by a person since deceased against his interest and not made with a view to pending litigation shall be admissible in evidence in any case"); *Mashburn v. Wright*, 204 Ga. App. 718, 719-720 (420 SE2d 379) (1992) (statements of donor/decedent to donee were admissible as an exception to the hearsay rule in that donor's death created the necessity for the admission of the statements, and a circumstantial guaranty for the trustworthiness of the donor's statements was provided by the fact that the statements were against his own interest, i.e., donor was consciously divesting himself of ownership of the property).

[27] See *Fotiatis v. Clemmons*, 134 Ga. App. 487, 488 (1) (214 SE2d 736) (1975).

[28] Compare *Gray v. Benton*, 280 Ga. App. 339 (634 SE2d 86) (2006) (reversing grant of summary judgment where the evidence of a valid inter vivos gift conflicted); see *Mashburn*, supra at 719 (affirming judgment for donee where evidence authorized a jury to find the elements of a valid inter vivos gift).

[29] Supra.

[30] Id. at 487-488.

[31] See *Ansley*, supra at 696 (2); see generally *Tucker v. Addison*, 265 Ga. 642, 643 (1) (458 SE2d 653) (1995) (summary judgment affirmed where the undisputed evidence showed that the purported donor merely made a proposal for future action – property would belong to the donee if he moved onto it and fenced it – and did not intend to make a present gift; a valid inter vivos gift must operate in the donor's lifetime, immediately and irrevocably).