**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and LAND, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 10, 2023**

# In the Court of Appeals of Georgia

A22A1590. WALSH v. BOWEN.

McFADDEN, Presiding Judge.

This case concerns whether Rick Walsh made inter vivos gifts of funds to educational savings accounts (the "529 accounts") owned by his wife, Alice Walsh, for the benefit of her granddaughters. See 26 USC § 529; OCGA § 20-3-630 et seq. The only issue on appeal is whether there is evidence of a delivery of the gift during Rick Walsh's lifetime sufficient to defeat a motion for partial summary judgment filed by Kimberly Bowen, the executor of his estate. Because there is evidence that Rick Walsh took actions indicating that he renounced his dominion over the funds and transferred that dominion to Alice Walsh, a jury could find that there was a constructive delivery of the gift. So summary judgment is not appropriate, and we reverse the superior court's grant of Bowen's motion.

1. *Facts and procedural history.*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . ." OCGA § 9-11-56 (c). "In our de novo review of the grant or denial of a motion for summary judgment, we view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." *Longstreet v. Decker*, 312 Ga. App. 1, 3 (717 SE2d 513) (2011).

So viewed, the record shows that on various occasions over the course of several years, Rick Walsh stated his desire to use funds from a brokerage account he held with Raymond James & Associates to set up and fund 529 accounts for the granddaughters of his wife, Alice Walsh. After being hospitalized with several significant medical problems, Rick Walsh took steps to open the 529 accounts with Alice Walsh as the accounts' owner. See OCGA § 20-3-632 (2) (defining the "account owner" as the person or entity who "establishes a[n educational] savings trust account . . . on behalf of a beneficiary"). He spoke on the telephone with persons at Raymond James and verbally authorized the transfer of funds from his brokerage account to the 529 accounts.

But before it would transfer the funds, Raymond James also required Rick Walsh to sign a written letter of authorization. Rick Walsh, who was hospitalized at the time, expressed frustration upon learning this, as explained by Alice Walsh who testified:

> I took [the letter of authorization] to Rick and told him when I got in there, I said, Rick, you've got to sign this LOA and he said, I've already told Mark [his Raymond James broker] what to do. I said, I understand that you've given him verbals all the time, but for this you've got to [sign this] LOA. So he signed the LOA and that [was] when he was complaining about Mark. He said, this ticks me off with Mark. He said, I told him to do this months ago and he should have already had this done. It should be complete.

Alice Walsh further testified that Rick Walsh was "upset with Mark because this should have been done months ago[.]"

Alice Walsh gave Rick Walsh a letter of authorization that Raymond James had sent her. That letter stated: "Please use this letter as authorization to issue a check to the American Funds for $50,000/split 50/50 FBO of [the granddaughters] from my account . . . ," identifying his brokerage account by name and number. Rick Walsh signed the letter on July 21, 2015 and then gave it to Alice Walsh, who placed it in her purse.

On July 24, 2015, Alice Walsh learned that Raymond James had not yet transferred the funds because it had not received the letter of authorization. But Rick Walsh, who was mere days from death at that point, asked Alice Walsh not to leave his hospital bedside. Consequently, Alice Walsh did not send the letter to Raymond James at that time.

Rick Walsh died on July 26, 2015. The next day, Alice Walsh faxed the letter of authorization to Raymond James. Raymond James issued a check to the 529 accounts, but later reversed that transfer upon learning that Rick Walsh had died before Raymond James received the letter of authorization.

In proceedings before the probate court, Rick Walsh's executor, Bowen, petitioned for a settlement of accounts, alleging that several purported inter vivos gifts, including the transfer of funds to the 529 accounts, were estate property. After a hearing, the probate court entered an order approving Bowen's petition and granting her attorney fees and costs against Alice Walsh. Among other things, the probate court held that "there was no completed delivery of the alleged gift [of funds to the 529 accounts]." The probate court also found that Rick Walsh lacked the necessary mental capacity to make the gifts and that Alice Walsh exerted undue influence over him.

4

Alice Walsh brought a de novo appeal from this ruling in superior court. See OCGA § 5-3-2 (a), § 5-3-29. Bowen moved for partial summary judgment as to the alleged gifts to the 529 accounts. The superior court granted Bowen's motion, finding that there were no inter vivos gifts as a matter of law because Rick Walsh had not completed the delivery of the intended gifts in his lifetime. Alice Walsh appeals.

2. *Analysis.*

An inter vivos gift operates "in the donor's lifetime, immediately and irrevocably; it is a gift executed; no further act of parties, no contingency of death or otherwise, is needed to give it effect." *Longstreet*, 312 Ga. App. at 5 (2) (citation and punctuation omitted). A valid inter vivos gift must meet three statutory criteria: "(1) The donor must intend to give the gift; (2) The donee must accept the gift; and (3) The gift must be delivered or some act which under law is accepted as a substitute for delivery must be done." OCGA § 44-5-80. Delivery may be actual or constructive, see OCGA § 44-5-82, but "[t]o be effective, *delivery must be made during the donor's lifetime.*" *Longstreet*, 312 Ga. App. at 5 (2) (emphasis in original). See also *Ansley v. Sunbelt Investments Realty*, 176 Ga. App. 693, 695-696 (2) (337 SE2d 448) (1985).

5

This appeal concerns only the third criterion: actual or constructive delivery made during the donor's lifetime. Although Bowen also challenges Rick Walsh's donative intent, she concedes for purposes of summary judgment that a factual dispute exists on that issue. And a donee's acceptance is presumed in cases involving gifts of substantial benefit. See OCGA § 44-5-81.

Alice Walsh argues that there is evidence of constructive delivery during Rick Walsh's lifetime that precludes summary judgment. "Actual manual delivery is not essential to the validity of a gift. Any act which indicates a renunciation of dominion by the donor and the transfer of dominion to the donee shall constitute a constructive delivery." OCGA § 44-5-82. See *Smith v. Tibbits*, 359 Ga. App. 362, 370-371 (2) (857 SE2d 820) (2021). A jury may infer delivery from a donor's acts, and whether those acts indicate a renunciation of dominion sufficient to effect constructive delivery is generally a question of fact. See *Ward v. Sebren*, 242 Ga. 782, 783 (1) (251 SE2d 524) (1979); *Harrison v. Martin*, 213 Ga. App. 337, 343 (1) (444 SE2d 618) (1994); *Bates v. Bates*, 163 Ga. App. 268, 271 (3) (293 SE2d 515).

We agree with Alice Walsh that a jury could infer from the evidence in this case that Rick Walsh renounced his dominion over the funds and transferred that dominion to Alice Walsh, the owner of the 529 accounts, when he signed the letter

6

authorizing the transfer and gave that letter to Alice Walsh. There is evidence that, given Rick Walsh's physical condition at the time, he took every step he could to immediately and irrevocably transfer dominion of the gift to Alice Walsh. He arranged for the creation of the 529 accounts. He instructed Raymond James verbally to transfer the funds. Then, when told that he also needed to sign a letter of authorization, he did so. Unable to deliver that letter to Raymond James himself, he gave the letter to Alice Walsh, who as the owner of the accounts was effectively the donee, see OCGA § 20-3-634 (b) (3) (noting that the owner of a 529 account has the power to redirect the funds in the account to other beneficiaries of the owner's choice), thereby giving her the means to complete the delivery of the gift without any further action on his part. Finally, he expressed his desire that the transfer be completed immediately.

We are not persuaded by Bowen's argument that, as a matter of law, Rick Walsh's act of signing the written authorization and giving it to Alice Walsh did not constitute a renunciation of his dominion over the funds because he could have revoked that transaction. There can be no constructive delivery of a gift unless it is "beyond the power of the donor to revoke the gift." *Brooks v. Brooks*, 54 Ga. App. 276, 278 (187 SE 687) (1936) (citation and punctuation omitted). Nevertheless,

Georgia appellate courts have found the existence of a jury question on constructive delivery in cases where the donor retained possession of, access to, or the ability to control the property. See, e. g., *Rector v. Rector*, 244 Ga. 315, 315-316 (260 SE2d 55) (1979) (finding a question of fact for the jury as to whether there was a delivery of items purported to be gifts from one spouse to another that were kept in a lock box jointly maintained by both of them); *Wallace v. Moore*, 219 Ga. 137, 139 (132 SE2d 37) (1963) (finding evidence to support an inter vivos gift of savings certificates from the donor to two minor children, even though the certificates were payable to both the donor and the children and the children's mother asked the donor to keep the certificates in his safety deposit box, to which the mother did not have access); *Mashburn v. Wright*, 204 Ga. App. 718, 722-723 (420 SE2d 379) (1992) (finding a question of fact for the jury as to whether the donor had relinquished control of a certificate of deposit even though it had not been legally transferred to the donee and the donee left it with the donor for safekeeping); *Williams v. McElroy*, 35 Ga. App. 420, 421 (133 SE 297) (1926) (finding a question of fact for the jury as to whether a husband had relinquished control over a purported gift of unendorsed promissory notes to his wife where the notes were kept in a safe deposit box to which both spouses had access).

The cases cited by Bowen in support of her revocation argument are inapposite. None involve evidence that the donor intended his acts to effect an immediate, irrevocable delivery of the gift to the donee by giving the donee the means of accomplishing that delivery. See *Rogers v. Carter*, 177 Ga. 605 (170 SE 868) (1933) (the donor gave the gift to a third party to deliver to the donee, but before the third party did so the donor retrieved the gift and died before returning the gift to the third party); *Helmer v. Helmer*, 159 Ga. 376 (125 SE 849) (1924) (the gift was a reduction in an amount of money that the donee owed the donor, which was reflected by the donor's endorsement on a note that remained at all times in the possession of a third party, the donor's attorney); *Knight v. Johnson*, 156 Ga. 165 (118 SE 661) (1923) (the donor gave the gift to a third party, not intending that it be immediately delivered to the donee); *NeSmith v. Ellerbee*, 203 Ga. App. 65 (416 SE2d 364) (1992) (the donor did not intend to make a gift during his lifetime); *Ansley*, supra, 176 Ga. App. 693 (the donor had set in motion the purchase of a gift for the donee but died before that purchase occurred).

Moreover, none of the cases cited by Bowen for this argument involve a gift between a donor and a donee who are family members living in the same household, as were Rick and Alice Walsh. In such circumstances, "the rule as to delivery of a gift

9

is not so strictly applied [and] the law in such cases accepts as delivery[ ] acts which would not be so regarded when the transactions are between strangers living in different places." *Fotiatis v. Clemmons*, 134 Ga. App. 487, 488 (1) (214 SE2d 736) (1975). See *Harrison*, 213 Ga. App. at 343-344 (1), (2) (holding that, in determining whether a donor completely relinquished control over a gift, "the jury may consider that the rules as to delivery are relaxed where the donor and donee are members of the same family and reside in a common residence," and citing evidence of a hospitalized donor's physical inability to perfect actual delivery of a gift to a family member residing in his household as support for a finding that there was constructive delivery of the gift) (citation and punctuation omitted).

In summary, although Bowen advocates for a bright-line rule, the constructive delivery determination is fact-driven and generally a question for the jury. And a jury could infer in this case that there was "no other purpose," *Culpepper v. Culpepper*, 18 Ga. App. 182, 183 (89 SE 161) (1916), in Rick Walsh's acts than to irrevocably renounce dominion over the funds and transfer that dominion to Alice Walsh by taking every step he could to effect the transfer and giving Alice Walsh the ability to complete the delivery of the gift. See id. (involving a donor who was himself physically unable to deliver the gift); *Banks v. Harvey*, 98 Ga. App. 196, 196-197 (1)

10

(105 SE2d 341) (1958) (finding evidence that the donor gave the donee keys to personal property and declared that he was giving the property to the donee was "sufficient evidence to sustain a finding that there has been a constructive delivery of the [property]").

For these reasons, we find that a jury question exists regarding whether there was a constructive delivery of the gift within Rick Walsh's lifetime. This jury question precludes the grant of partial summary judgment to Bowen. Consequently, we need not address Alice Walsh's alternative arguments regarding whether there was an actual delivery of the gift within Rick Walsh's lifetime.

*Judgment reversed. Gobeil and Land, JJ., concur*.